Filed 6/27/22 P. v. Gomez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ROY VALENTINO GOMEZ, Defendant and Appellant. | F083425 (Super. Ct. No. 21CM-2842A) **OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County. James W. Hollman, Judge. (Retired Judge of the Tulare Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]       Before Peña, Acting P. J., Meehan, J. and DeSantos, J.

In October 2021, defendant Roy Valentino Gomez, was sentenced to a total term of three years pursuant to a negotiated plea agreement. As part of that agreement, defendant also waived his right to appeal his conviction. In this appeal, defendant challenges only portions of the sentence imposed. We affirm the judgment.

## PROCEDURAL AND FACTUAL SUMMARY

After a Kings County Sheriff's Deputy observed defendant repeatedly crossing double yellow lines while driving, he initiated a traffic stop. After learning defendant was on probation, the deputy asked defendant if there was anything illegal in the vehicle. Defendant admitted there was a gun in a compartment in the driver's door, and a passenger in the car admitted there was a pipe under the passenger seat. Defendant was arrested, and at the jail, it was determined defendant was under the influence of a controlled substance. A strip search revealed defendant had a baggie with some form of contraband in his belly button.

In a complaint filed on May 27, 2021, defendant was charged with possessing a firearm while also possessing a controlled substance (Health & Saf. Code, § 11370.1, subd. (a), a felony; count 1), being a felon in possession of a firearm (Pen. Code,[1] § 29800, subd. (a)(1), a felony; count 2), unlawfully possessing ammunition (§ 30305, subd. (a)(1), a felony; count 3), having a concealed firearm in a vehicle (§ 25400, subd. (a)(1), a felony; count 4), being a prohibited person carrying a loaded firearm (§ 25850, subd. (a), a felony; count 5), bringing a controlled substance into a jail (§ 4573, subd. (a), a felony; count 6), being under the influence of a controlled substance with a firearm (Health & Saf. Code, § 11550, subd. (e), a felony; count 7), driving under the influence of a drug (Veh. Code, § 23152, subd. (f), a misdemeanor; count 8), being under

---

[1] All further statutory references are to the Penal Code, unless otherwise specified.

the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a), a misdemeanor; count 9).[2]

At a hearing held on June 1, 2021, at which time bail was considered, defendant was released to the probation department for a pretrial monitoring GPS program. Defendant was instructed to comply with all terms and conditions of that program. A document entitled "Pretrial Release Terms and Conditions" stated defendant was to comply with "Intensive Pretrial Monitoring." The conditions listed under this category included (1) reminder notices by telephone about upcoming court dates, (2) in-person reporting to probation once a week, (3) monthly field or home visits by a probation officer, (4) random drug testing, and (5) placement on GPS.

On September 8, 2021, pursuant to a negotiated plea deal, defendant pled no contest to counts 2, 6, 7, and 8. As part of the negotiated plea, it was agreed defendant would be sentenced to a stipulated term of three years in state prison. During the hearing, defendant also waived his right to appeal his conviction.

At the sentencing hearing held on October 6, 2021, defendant's attorney raised the issue of custody credits and that he had not been provided credits for the five-month period he participated in the pretrial monitoring program ordered by the court during the bail hearing. Defendant was ultimately sentenced to the upper term of three years for count 2, as well as three years each for counts 6 and 7. The terms for counts 6 and 7 would run concurrently with the term imposed for count 2. The sentence of 180 days for count 8 was also to run concurrently with the term for count 2. The trial court awarded defendant credits for 13 days to be applied toward his sentence. Defendant was not awarded any custody credits for the period he was subject to the pretrial monitoring program.

---

[2] Count 9 is also charged against another individual not part of this appeal who was in the car at the time of the search and arrest. An additional count in the complaint, count 10, was only alleged against this other individual.

## **DISCUSSION**

The issues raised in this appeal address only the adequacy of the custody credits awarded to defendant when he was sentenced under a negotiated plea agreement, as well as the legal validity of the concurrent sentences imposed.

## I.    **Defendant's Request for Judicial Notice**

For this appeal, defendant submitted a request asking this court to "take judicial notice of the 'Rules and Regulations of Electronic Monitoring/Home Confinement Program' … and the 'County of Kings Public Safety Realignment and Post Release Community Supervision, 2019 Plan.' " This request concerns a program adopted by Kings County under section 1203.018, that allows participants to earn custody credits for pretrial or presentence releases by agreeing to electronic monitoring and other conditions with home detention. We deny the request for judicial notice to the extent it exceeds the scope of what we may consider under Evidence Code sections 452 and 459.

Specifically, defendant asks this court to consider not only the existence of the program, but argues that his participation in the program automatically entitled him to custody credits while subject to the requirements placed upon him by that program. While we are able to take judicial notice of the existence of the program, we cannot take judicial notice to resolve a disputed fact. (*Barri v. Workers' Comp. Appeals Bd.* (2018) 28 Cal.App.5th 428, 437, fn. omitted.) Our role here is not to weigh the credibility or weight of the evidence considered below. Instead, we accept the truth of the evidence favoring the judgment below and consider whether the evidence submitted in opposition to the trial court defeats the evidence supporting the judgment as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

Whether or not defendant participated in the electronic monitoring program to the full extent as contemplated by section 1203.018, resulting in custody credits involved a question of fact that was resolved by the trial court. Therefore, we only grant the request to take judicial notice for the limited purpose of recognizing the existence of a program in

4.

Kings County authorized by section 1203.018. In all other respects, the request for judicial notice is denied.

## II. Defendant is Not Entitled to Any Additional Custody Credits

As noted above, defendant was awarded 13 days of custody credits at the time of sentencing. However, defendant believes he was entitled to many more days of custody credits for the period between his release to the probation department following his arraignment and his sentencing. Defendant argues he is entitled to these custody credits because he was participating in an electronic monitoring/GPS program which made him eligible for the credits statutorily.

Pursuant to section 2900.5, subdivision (a), when a defendant has been in custody, including "days served in home detention" pursuant to section 1203.018, the defendant shall receive credits for those days "upon his or her term of imprisonment." To be eligible for custody credits under section 1203.018, defendant was required to meet the following criteria:

"(c)

"(1) In order to qualify for participation in an electronic monitoring program pursuant to this section, the inmate shall be an inmate with no holds or outstanding warrants to whom one of the following circumstances applies:

"(A) The inmate has been held in custody for at least 30 calendar days from the date of arraignment pending disposition of only misdemeanor charges.

"(B) The inmate has been held in custody pending disposition of charges for at least 60 calendar days from the date of arraignment.

"(C) The inmate is appropriate for the program based on a determination by the correctional administrator that the inmate's participation would be consistent with the public safety interests of the community."

5.

The record provided to this court indicates defendant was held in custody substantially less than 30 days when he was released to the probation department on June 1, 2021. The record also does not support the conclusion defendant's participation in the electronic monitoring program was necessary or consistent with "the public safety interests of the community."[3] In fact, when considering the issue of bail, the trial court stated:

> "He is not charged with a felony involving acts of violence, and I would have to find that there's a substantial likelihood that his release would result in great bodily injury to others and the facts are evidence and the presumption great that the defendant committed the offense, and there's a substantial likelihood that his release would result in great bodily injury to others. I cannot make that finding based on his charges and even his prior, which is not particularly—I suppose it could be considered, but the charges, they're not acts of violence."

It is not enough for defendant to show he was placed on some form of electronic monitoring to receive custody credits. To receive custody credits for the period he was on electronic monitoring, defendant had to show he was participating in a program as defined by section 1203.018 that involved home detention. (See *People v. Gerson* (2022) 74 Cal. App.5th 561, 582.) Defendant also had to provide evidence establishing the terms of his release to probation were " 'custodial or restraining.' " (*Ibid*.) Subdivision (d)(1) of section 1203.018 provides that to qualify for custody credits, a participant in the program must "remain within the interior premises of the participant's residence during the hours designated by the correctional administrator." Being subject

---

**3** In his reply brief, defendant represents that the trial court made a finding that his participation in the electronic monitoring program was in the public safety interests of the community. However, the record cited by defendant does not actually support that contention. The pretrial release form signed by defendant provides no statement that his agreement to participate in any electronic monitoring is related to public safety. In the transcript of the bail hearing, the trial court does not reference the public safety of the community when rejecting the probation department's recommendation for a no bail hold. In fact, the trial court notes he does not have the necessary history of violence that would justify no bail.

to an electronic monitoring program is not enough on its own, as electronic monitoring is also used for work furlough or work release programs. (§ 1203.018, subd. (j)(2).) Electronic monitoring without home detention will, therefore, not automatically result in eligibility for custody credits under section 1203.018.[4]

Defendant relies heavily on the case of *People v. Raygoza* (2016) 2 Cal.App.5th 593, to argue programs authorized by section 1203.018 automatically entitle an inmate to custody credits for the period of time spent in those programs. However, when relying on *Raygoza*, defendant also acknowledges that programs authorized by section 1203.018 must be read to require the award of custody credits to "*home-detained*" defendants who participate in electronic monitoring programs. (*Raygoza*, at p. 601, italics added.) In fact, the *Raygoza* opinion is easily distinguished as the trial court in that case required home detention for 24 hours a day, " 'except for qualified medical and/or emergencies.' " (*Id*. at p. 597.) The defendant in that case had a specific obligation to provide evidence of his home detention, not simply that he was part of a qualified program. (*Id*. at p. 601.) In contrast here, when releasing defendant to the probation department, the trial court listed various conditions in addition to the need to participate in electronic monitoring, such as the need to seek and maintain "gainful employment." There was no specific requirement listed for home detention. Instead, the requirement defendant seek and maintain gainful employment suggests the type of home detention contemplated in *Raygoza* was not considered here.

The burden was on defendant to establish any entitlement to presentence custody credits. (*People v. Jacobs* (2013) 220 Cal.App.4th 67, 81.) At the sentencing hearing,

---

**4**    Defendant failed to provide any written documentation he consented to the terms and conditions of the electronic monitoring/home confinement program, which would have specified how home confinement was part of that program. The document defendant signed at the time he was released to the probation department on June 1, 2021, fails to list any requirement for home detention.

7.

defendant's attorney stated only that defendant was entitled to time credits for every day "he's been on the monitor." While there were some questions raised about whether he was on home detention, no evidence was offered showing home detention was part of his monitoring program, or how many hours per day he was required to be in home detention. In fact, defense counsel admitted that he was not aware of the specifics of defendant's supervision, but that "he is subject to detention if he is not in compliance with the terms of the monitor." Thereafter, the trial court issued the sentence and gave defendant only 13 days of custody credits, none of which was related to the time defendant was on electronic monitoring.

Defendant cannot overcome the basic fact he was not eligible for custody credits under section 1203.018. He was never in custody for the qualifying period specified in the statute, and the trial court made no finding that his participation in the program was for the "public safety interests of the community." (§ 1203.018, subd. (c)(1)(A–C).) Even if he was eligible for these custody credits, defendant failed to meet his burden to prove he was entitled to presentence custody credits while on some form of electronic monitoring. Defendant failed to prove his electronic monitoring included home detention as anticipated by section 1203.018. The record provided to the trial court supports the denial of defendant's request for any additional days of presentence credits for the time he was on electronic monitoring.

## III.    The Lack of a Probable Cause Certificate Precludes Defendant's Section 654 Claim

Defendant initially contended the trial court violated the provisions of section 654 when it imposed concurrent sentences for counts 2 and 7 because this constituted separate punishments for the same act of criminal conduct. The People believe defendant waived this issue because he failed to obtain a certificate of probable cause allowing him to appeal the sentence imposed as part of a negotiated plea agreement. On reply, defendant concedes this court is bound by the Supreme Court opinion in *People v. Cuevas* (2008)

8.

44 Cal.4th 374, 379, but notes he intends to challenge the application of *Cuevas* to the facts of this case in a petition for review should we not grant relief here.

Pursuant to section 654, subdivision (a):

"An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Absent a certificate of probable cause, a defendant may not complain that a sentence lid imposed under a negotiated plea agreement violates the statutory proscription against multiple punishments since that is a challenge to the plea's validity. (*People v. Cuevas*, *supra*, 44 Cal.4th at p. 376.) The rationale for this policy is that defendants who have received the benefit of their bargain should not then be allowed continued attempts to better these bargains through the appellate process. (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

By agreeing to a plea agreement that specified a maximum term, defendant waived the ability to raise a section 654 claim here without first obtaining a certificate of probable cause. (§ 654; Cal. Rules of Court, rule 4.412(b).)

## DISPOSITION

The judgment is affirmed.